**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANTE DESHAWN MOORE,

       Petitioner,

v.                                  Case No. 2:12-cv-14679

JOE BARRETT,

       Respondent,

                                      /

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

       Petitioner Dante Deshawn Moore presently confined at the Parnall Correctional Facility in Jackson, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenged his conviction for four counts of criminal sexual conduct in the first-degree.[1] For the reasons that follow, the petition for writ of habeas corpus will be denied.

**I.  BACKGROUND**

       Petitioner was convicted following a jury trial in the Macomb County Circuit Court.

       Petitioner began sexually abusing his step-daughter, S.F., when she was eleven years old.[2] Petitioner would touch the victim when her mother and sisters were away from the home. Petitioner rubbed S.F.'s vagina, and touched and kissed her breasts and chest. S.F. testified that Petitioner assaulted her numerous times. (Tr. 7/18/07, pp.

---

      [1] Mich. Comp. Laws § 750.520b(1)(b); Mich. Stat. Ann. § 28.788(2)(1)(b).

      [2] Because the victim was a minor at the time of the offenses and the time of trial, the court refers to the victim by her initials to protect her privacy.

12, 15, 21, 23, 27-29, 31).  Petitioner isolated S.F., prohibiting her from going outside to play or socialize and kept her at home. (*Id.,* p. 25).  Petitioner warned S.F. he would kill her and her mother if she told anyone about the abuse. (*Id.,* p. 27).  Petitioner was sometimes armed with a knife during the assaults and would show it to S.F., threatening to kill her if she reported the abuse. (*Id.*, pp. 32-33).  Petitioner physically abused S.F.'s mother, almost daily, which increased S.F.'s fear of Petitioner. (*Id.*, pp. at 34, 40).  S.F. did not report the sexual abuse until after her mother divorced Petitioner and he had moved out of the house.  S.F. only reported the abuse in October, 2006, when she was taken to Harbor Oaks Hospital by the police after fighting with her mother. (*Id.*, pp. 18-20).

Petitioner testified at trial and denied sexually abusing his step-daughter. (Tr. 7/19/07, p. 14).

Following his conviction, Petitioner's appellate counsel filed a motion for a remand to the trial court for an evidentiary hearing pursuant to *People v. Ginther,* 212 N.W. 2d 922 (Mich. 1973) on his ineffective assistance of counsel. *People v. Moore*, No. 281046 (Mich. Ct. App. Feb. 27, 2009). The motion was granted and an evidentiary hearing was held on June 4, 2010; the judge determined that counsel was not ineffective. Hr'g Tr. 12 June 4, 2010, ECF No. 10-12, 905.

After the remand proceedings, the Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Moore*, No. 281046, 2011 WL 2140361 (Mich. Ct. App. May 31, 2011).  Petitioner's motion for reconsideration also was denied. *People v. Moore*, No. 281046 (Mich. Ct. App. Aug. 19, 2011).

2

Petitioner subsequently filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court.  The Michigan Supreme Court, in *lieu* of granting leave to appeal, reversed the Court of Appeals's judgment in part and remanded the case to the Macomb County Circuit Court for resentencing, and in all other respects denied the application. *People v. Moore*, 806 N.W.2d 306 (Mich. 2011).

Petitioner was re-sentenced on September 12, 2012 to concurrent terms of 136 months to 30 years' imprisonment for each of his convictions.

In 2012, Petitioner filed his habeas petition, which was held in abeyance pending the resolution of Petitioner's re-sentencing appeal in the state courts.  The court also administratively closed the case. *Moore v. Bergh,* No. 12-cv-14679; 2013 WL 2049136 (E.D. Mich. May 14, 2013).  Petitioner's new sentence was affirmed on appeal. *People v. Moore,* No. 312909, 2014 WL 953571(Mich. Ct. App. Mar. 11, 2014); *leave to appeal denied at* 852 N.W.2d 178 (Mich. 2014).

On June 26, 2015, the court granted Petitioner's motion to lift the stay and to amend his habeas petition.  In his original and amended petitions, Petitioner seeks relief on the following grounds:

> I. The Petitioner's trial counsel denied him effective assistance of counsel when he did not obtain reports concerning the assault charges filed against the complainant which prompted her to "disclose" the instant allegations to avoid pretrial detention, and failed to secure expert testimony to respond to the pseudo-expert testimony of the police officer.

> II. This court should permit the [Petitioner] to conduct a post-conviction discovery of evidence regarding the assault charge brought against the complainant, the investigative reports concerning the complainant's allegations, the CPS records concerning the investigation of the other children, and the school records in this matter.

3

III. The trial court committed reversible error in permitting the investigating officer to testify as an expert witness in this matter to highly contested propositions regarding the behavior of children of domestic violence, and regarding patterns of disclosure of teenage sexual abuse victims.

IV. The prosecutor reversibly erred by repeatedly injecting and arguing that the [Petitioner] had exercised his post-arrest right to remain silent. The fact that the objections were sustained does not cure the taint of these objections because there was no cautionary instruction and a jury would have been incapable of honoring such an instruction.

V. [Petitioner] was denied his constitutional right to due process where the trial court improperly determined that he was guilty by a preponderance of the evidence of the untried charges alleged to have occurred before complainant's [sic] was thirteen and he must be resentenced.

VI. The law of the case doctrine precluded the prosecutor from arguing and the trial court from finding [Petitioner]'s minimum sentence guideline range exceeded 108-180 months. [3]

## II. STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] The court has renumbered Petitioner's first and second claims from his amended habeas petition to be his fifth and sixth claims for purposes of judicial clarity.

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the

5

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  DISCUSSION

**A.  Claim # 1.  The ineffective assistance of counsel claims.**

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test.  First, he must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, Petitioner must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective

6

assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101.

Petitioner initially appears to argue that he was constructively denied the assistance of counsel because his trial attorney failed to subject the prosecutor's case to "meaningful adversarial testing."

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a

defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case —such that reversal based on ineffective assistance of counsel is warranted with no inquiry into prejudice— the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

Counsel's alleged errors here came nowhere close to "constructive denial of counsel." Counsel actively represented Petitioner at his trial. *Moss,* 286 F. 3d at 860-62. Petitioner's counsel actively participated in jury *voir dire.* (Tr. 7/17/07, pp. 11-12, 31-47, 50, 53).  Petitioner's counsel made an opening statement. (*Id.,* pp. 73-81).  Counsel extensively cross-examined the prosecution's witnesses. (Tr. 7/17/07, pp. 118-60, Tr. 7/18/07, pp. 4-11, 47-80, 84-87, 89, 120-39, 144-46).  Counsel made numerous objections. (Tr. 7/17/07, pp. 3-4, 104, 110, 162, 164, 167-69; Tr. 7/18/07, pp. 32, 38, 83, 92-95, 97, 102-104, 106-07, 109, 113, 116, 120, 140).  Counsel questioned Petitioner on the witness stand. (Tr. 7/18/07, pp. 149-74, Tr. 7/19/07, pp. 3-17).  Counsel made an extensive closing argument. (Tr. 7/19/07, pp. 58-73).

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697).   In this case, counsel's alleged failures do not approach a "complete" failure to provide a defense.  The presumption of prejudice therefore does not apply and

8

Petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner first contends that trial counsel was ineffective for failing to obtain records of the victim's arrest for assault and her psychological records from Harbor Oaks Hospital. Petitioner argues that this evidence would have impeached the victim's credibility and established a motive for her to fabricate the charges against Petitioner because it was only after the victim was arrested for the assault charge against her mother and taken to Harbor Oaks that she disclosed the sexual abuse.

The Michigan Court of Appeals rejected petitioner's claim:

We note that there is no evidence that the victim was arrested for assaulting her mother, as asserted by defendant. The officer in charge, Michael Gagnon, testified that when the case was referred to him it was for incorrigibility, "a status offense, not a criminal offense." The victim's mother never testified regarding an assault complaint and, in any case, never went forward with any sort of complaint after the victim's disclosure. There is no evidence that there was a record of an assault charge for defense counsel to obtain.

Much of the *Ginther* hearing involved questioning defense counsel regarding why he did not seek to obtain the records of the victim's psychological evaluation. Defense counsel testified that he did not seek to obtain the records because they were privileged. He also never sought to have the court make an in camera inspection of the records under MCR 6.201(C)(2). On cross-examination, defense counsel stated that he did not have a "good-faith belief, grounded in articulable fact, that there [was] a reasonable probability" that the records would "contain material information necessary to the offense," as required for a motion under MCR 6.201(C)(2).

The trial court obtained the records and inspected them. The court concluded that it was a mistake for defense counsel not to at least make a motion under MCR 6.201(C)(2) to have the court inspect the records. Nevertheless, after reviewing the records, the court concluded that there was no discussion in them about the sexual abuse. Instead, the court noted, they were merely "superficial records," containing a therapist's description of "[the victim's] immediate condition." The court further stated there was nothing "relevant or probative" in the records.

9

On the facts of this case, we cannot conclude that defense counsel performed deficiently by failing to obtain the records and ascertain whether they would be beneficial to the defense. Moreover, even if counsel's performance in this regard could be characterized as deficient, the records were in fact unsupportive, and there is accordingly no basis from which to conclude that the outcome would have been different if counsel had obtained and reviewed them.

*People v. Moore*, 2011 WL 2140361, at * 3 (internal citation omitted).

Petitioner is not entitled to relief on his claim because there is no evidence that the victim was arrested for assault or that the psychiatric records contained any references to the sexual abuse charges. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Moreover, defense counsel extensively cross-examined the victim and the other witnesses in this case and brought out a wealth of information to impeach the victim's credibility and to support the defense theory that the victim fabricated these charges. Counsel elicited testimony from Anitra Moore, Petitioner's ex-wife and S.F.'s mother, that Ms. Moore had been charged with the crime of assault with intent to commit murder in 2005, for shooting at Petitioner, although the charge was dismissed when Petitioner failed to appear in court. S.F. admitted that this made her angry against Petitioner. (Tr. 7/17/07, pp. 118-19, Tr. 7/18/07, pp. 75-78). Ms. Moore admitted that she called the police to her home after S.F. had gotten angry and thrown lotion and food all over the basement. Ms. Moore indicated that the police offered to file an incorrigibility charge, a juvenile status offense, against S.F. Ms. Moore testified that the police took S.F. from their home to Harbor Oaks Hospital for a psychiatric evaluation, and that S.F. was crying during the initial intake. (Tr. 7/17/07, pp. 130-40). Ms. Moore admitted that S.F.

10

never told her about the sexual abuse allegations or being threatened by Petitioner with a knife until she was hospitalized. (*Id.,* pp. 141, 146). Ms. Moore testified that although Petitioner was no longer living with them in 2005 and the two were seeking a divorce, S.F. did not tell her at that point about the abuse allegations. (*Id.,* pp. 158-59).

S.F. admitted on cross-examination that she never liked Petitioner and would tell him that he was not her father. (Tr. 7/18/07, pp. 47, 52-53). S.F. admitted that she had been kicked out of school twice. (*Id.,* pp. 50-51). Although acknowledging that she told her uncles about the fights between Petitioner and her mother, S.F. admitted she never informed them about the sexual abuse. (*Id.,* pp. 53-54, 86-87). S.F. admitted that the police took her to Harbor Oaks in handcuffs because she had been disrespecful to her mother. S.F. admitted to being scared. (*Id.,* pp. 65-69). S.F. was confronted with several inconsistencies between her trial testimony and her preliminary examination testimony concerning the details of the assaults. (*Id.,* pp. 65, 74-75). S.F. never told her mother about the assaults even after her mother and Petitioner had divorced and he was no longer living with them. (*Id.*, pp.76-78).

Petitioner was not prejudiced by counsel's failure to introduce S.F.'s psychological records or any additional arrest records because such evidence was cumulative of other evidence and witnesses presented at trial in support of Petitioner's claim that the victim had falsely accused Petitioner of sexually assaulting her. *Wong,* 558 U.S. at 22-23; *see also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995). In this case, the jury had significant evidence presented to it that the victim had delayed reporting the alleged abuse, that the police had been called to her house because the victim had created a disturbance, that the police had taken her to a psychiatric hospital,

11

that these were motives for the victim to fabricate sexual assault charges against Petitioner, and inconsistencies in her testimony.  Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.  Petitioner has failed to overcome the presumption that counsel's decision not to present additional evidence concerning the victim's motive to fabricate a sexual assault charge against Petitioner was sound trial strategy. *See Robinson v. Lafler*, 643 F. Supp. 2d 934, 939 (W.D. Mich. 2009) (finding defense counsel was not ineffective in failing to call additional witnesses to testify about victim's motive to lie; decision was reasonable and within the range of professionally competent assistance.).

Petitioner next claims that trial counsel was ineffective for failing to call an expert witness to testify on the issues of delayed disclosure and false disclosure of sexual abuse allegations, particularly after Detective Michael Gagnon testified regarding his experiences with child disclosure of sexual abuse.

The Michigan Court of Appeals discussed at great length Petitioner's claim before rejecting it:

> At trial, Gagnon testified that, in his experience, "young people who are victims of any type of sexual assault ... have an easier time repressing the memories than adults do."  He repeated this point three times.  Defense counsel did not object to this testimony.  Gagnon further testified that, in his experience, children who live in an abusive home are "very shy and very reserved."  He further stated that children "don't remember details on things."  Defense counsel objected to this testimony on the ground that Gagnon was not an expert.  The trial court overruled the objection, stating, "He can tell us his experience."   On cross-examination, with respect to this testimony, defense counsel asked Gagnon, "Does the truth ever change?" Gagnon responded, "The truth doesn't change.  People's interpretation of the truth

12

could change." These appear to be the only questions defense counsel asked Gagnon that were directly related to this issue.

At the *Ginther* hearing, a forensic psychologist, Dr. Terence Campbell, testified as an expert that the victim demonstrated multiple warning signs for false disclosure, including viewing the accused as an enemy, delayed disclosure, and the possibility of seeking to avert attention away from her own conduct. He opined that this behavior may have indicated that the victim was affected by oppositional defiant disorder. Campbell also testified that Gagnon's testimony was misleading to the jury when he suggested that it is common for children or adolescents to repress memories of sexual abuse and to be shy and reserved. Campbell opined that current research on this issue demonstrates that this is not an accurate portrayal of child victims of sexual abuse.

In his testimony at the *Ginther* hearing, defense counsel acknowledged that the issue of the victim's delayed disclosure was a relevant issue in this case. He further acknowledged that the victim demonstrated multiple signs of possible false disclosure. He testified that he did not consult with an expert because it is "not [his] way of practice" for criminal sexual conduct cases. He explained that this is because the case hinged primarily on a question of credibility between the victim and the defendant and that an expert does not "help attack the credibility of the witness."

At trial, defense counsel questioned the victim's mother about the victim's delayed disclosure. The mother testified that the victim told her that she did not disclose earlier because she was too scared. Defense counsel also asked the victim repeatedly regarding why she failed to disclose earlier, eliciting testimony that she was afraid of defendant. He also elicited testimony that she had always hated defendant.

In his closing argument, defense counsel argued that the victim had ample opportunity to disclose the sexual abuse after defendant had left the house and, therefore, after her fear of him should have lessened. Counsel further argued that the victim's disclosure to the psychological evaluator gave the victim a good opportunity to extract herself from a bad situation by refocusing the attention on someone else. He further noted that the victim expressed a long record of hatred toward defendant.

Defense counsel's only explanation for why he did not consult an expert was that it was "not his practice" to do so in a case that hinges primarily on credibility. In other words, counsel's decision in this regard does not appear to have been strategic in nature. Nevertheless, we are unable to conclude that there is a reasonable probability that the outcome would have been different if defense counsel had consulted and retained an expert. Defense

counsel, himself, presented much of Campbell's logic in his own closing argument. Thus, even if Campbell had testified for the defense at trial, he would have merely lent some additional weight to the ideas that defense counsel had already presented regarding the victim's credibility. Accordingly, we simply cannot conclude that any error in this regard was outcome determinative.

*People v. Moore*, 2011 WL 2140361, at *4–5 (internal citation omitted).

Although Petitioner's counsel did not call an expert witness on delayed or false disclosures of sexual abuse, trial counsel cross-examined the victim and her mother extensively about S.F.'s failure to promptly disclose the sexual abuse allegations, even after Ms. Moore and Petitioner had gotten a divorce and he was no longer living with them. Counsel also questioned the victim about her hatred for Petitioner. Counsel elicited from both the victim and her mother the fact that the sexual abuse disclosures were made only after the victim was taken in handcuffs by the police to a psychiatric hospital after the victim created a disturbance at home. Counsel argued in closing argument the victim reported the sexual abuse two and a half years after it happened. Counsel noted that although the victim reported fights between her mother and Petitioner to her uncles, she never mentioned the sexual abuse. Counsel argued that the victim had many opportunities to report the sexual abuse after Petitioner no longer lived with them, but failed to do so. Counsel also argued that the victim's disclosure to the psychological evaluator may have been motivated by the victim attempting to refocus attention on Petitioner to escape from her own bad situation. (Tr. 7/19/07, pp. 58-73). Moreover, contrary to the Michigan Court of Appeals' findings, defense counsel did appear to challenge Detective Gagnon's opinion in several ways. On cross-examination, counsel obtained an admission from Detective Gagnon that he was

14

assigned to the Youth Bureau and not to a division assigned to specifically investigate sex offenses.  Gagnon further admitted that he had been involved in investigating only about 20 criminal sexual conduct cases involving children. (Tr. 7/18/07, pp. 121-22, 136-37).  Gagnon further admitted that he did not tape the interview with the victim, nor did he ask her questions, but simply asked the victim to write down in a narrative fashion what happened. (*Id.,* pp. 130-31).

The Michigan Court of Appeals reasonably determined that Petitioner was not prejudiced by counsel's failure to present expert psychiatric testimony on delayed or false sexual abuse disclosures in light of the fact that trial counsel subjected the victim and her mother to a lengthy cross-examination regarding the victim's motives, her recall of the sexual abuse, and the consistency, reliability, and timing of her disclosures. *See Piontek v. Palmer*, 546 Fed. App'x. 543, 551 (6th Cir. 2013).  Accordingly, Petitioner is not entitled to relief on his claim. *Id.*

**B.  Claim # 2.  The discovery claim.**

In his second claim, Petitioner argues that the state trial court should have permitted him to conduct post-conviction discovery concerning the victim's arrest report, her psychological records, the victim's school records, and any child protective services investigations regarding the victim's other siblings.

To the extent that Petitioner alleges that his rights were violated by the trial court's refusal to order discovery before conducting the *Ginther* hearing as part of Petitioner's appeal, he is not entitled to relief.  There is no federal constitutional right to an appeal. *See Abney v. U. S.*, 431 U.S. 651, 656 (1977); *see also Smith v. Robbins,* 528 U.S. 259, 270, n. 5 (2000) (The Constitution does not require states to create

15

appellate review in criminal cases).  The right of appeal, as presently known to exist in criminal cases, "is purely a creature of statute," and "in order to exercise that statutory right, one must come within the terms of the applicable statute" with regards to that right to appeal. *Abney,* 431 U.S. at 656.  In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Whether the trial court erred in failing to order discovery before conducting Petitioner's evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See e.g. Hayes v. Prelesnik,* 193 Fed. App'x. 577, 584 (6th Cir. 2006).  Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* at 585.  The trial court's refusal to order discovery before conducting the *Ginther* hearing does not entitle Petitioner to relief. To the extent that Petitioner asks this court to order discovery of this information, his request is denied.

Habeas petitioners have no automatic right to discovery. *Stanford v. Parker*, 266 F. 3d 442, 460 (6th Cir. 2001).  A district court has the discretion, under Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, to grant discovery to a petitioner in a habeas case upon a fact specific showing of good cause, such as if a petitioner presents specific allegations which give the court reason to conclude that, if fully developed, the facts may lead the district court to believe that federal habeas relief is appropriate. *See Johnson v. Mitchell,* 585 F.3d 923, 934 (6th Cir. 2009); *see also Lott v. Coyle,* 261 F.3d 594, 602 (6th Cir. 2001).  However, Rule 6 of the Habeas Rules does

16

not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F. 3d 932, 974 (6th Cir. 2004)(internal quotation omitted).  A habeas petitioner's conclusory allegations are insufficient to warrant discovery under Rule 6. *Id.*  Instead, the petitioner must set forth specific allegations of fact. *Id.*

As mentioned above relative to Petitioner's ineffective assistance of counsel claim, his counsel extensively impeached the victim's credibility and highlighted the motives for her sexual abuse allegations.  Counsel particularly elicited information that the victim disclosed the sexual abuse only after she had been arrested and investigated for a possible incorrigibility charge and had been taken to a psychiatric hospital. Petitioner does no more than to speculate that these additional records would contain exculpatory information.  In light of the extensive impeachment evidence presented in this case, Petitioner cannot show that he was prejudiced by counsel's failure to impeach S.F. with such mental health or school records or any child protective services investigations.  Petitioner is not entitled to discovery of S.F.'s mental health or school records or any child protective services investigations because Petitioner has failed to show that the requested discovery could resolve any factual disputes that could entitle him to relief on his ineffective assistance of counsel claim. *Williams,* 380 F. 3d at 975. Petitioner is not entitled to relief on his second claim.

**C.  Claim # 3.  The improper opinion testimony claim.**

Petitioner next claims that his right to a fair trial was violated when Detective Gagnon was permitted to offer opinion testimony regarding various characteristics of child sex abuse victims without first being qualified as an expert on the subject.

17

The Michigan Court of Appeals rejected Petitioner's claim. Although ruling that the trial court erred in permitting Detective Gagnon to testify without first determining whether he would be qualified as an expert witness, the Michigan Court of Appeals concluded that Detective Gagnon would have qualified as an expert witness for the purpose of testifying about the behavioral tendencies of sex abuse victims because it was based on his experiences and training as a police officer, in which he had worked on over 100 similar cases involving both children and adult victims and "had significant training on issues relating to sexual assault cases, including interviewing child victims." *People v. Moore*, 2011 WL 2140361, at * 6.

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). In addition, federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008). In light of the deferential standard afforded to state courts under the AEDPA, the trial court's

18

decision to permit Detective Gagnon to offer opinion evidence concerning the

behavioral tendencies of child sex abuse victims was not contrary to clearly established

federal law. Petitioner cannot claim habeas relief on this basis. *See e.g. Schoenberger*

*v. Russell,* 290 F. 3d 831, 835 (6th Cir. 2002).

### D.  Claim # 4.  The claim involving references to Petitioner's post-arrest silence.

Petitioner lastly contends that the prosecutor committed misconduct when she

repeatedly mentioned Petitioner's post-arrest silence.

The Michigan Court of Appeals discussed, and rejected, Petitioner's claim at

length:

> At trial, the prosecutor ventured, or attempted to venture, into this territory several times.  First, the prosecutor asked Gagnon, "[W]ere you able to speak with [defendant] or get any written statement from [defendant]." Before Gagnon answered, defense counsel objected and the court sustained the objection.  The prosecutor again asked if Gagnon had received a written statement and another objection was sustained.  Finally, the prosecutor asked, "Were you ever able to get any other contact from anyone regarding [this] case, other than [from the victim]?"  Gagnon responded that he was not.
>
> Next, the prosecutor asked:
>
> Q. Now, as an officer, is there anything that you are—on a CSC case—that you need to do to follow up, other than get a statement from the victim, or as you said, to try to get both sides of the story?
>
> A. Basically, we need to get both sides of the story.  It's–I don't like working with one side of the story.  I like to talk to both people to see—
>
> Defense counsel again objected and the trial court again sustained the objection, stating, "I don't want any reference to the two people involved here."
>
> Lastly, the prosecutor asked defendant on cross-examination, "[D]o you think it's important to have both side[s] of the story?"  She followed up by asking, "Do you recall the officer coming to talk to you?"  Defense counsel objected and the trial court sustained the objection.  Immediately thereafter, the

prosecutor asked defendant, "[D]id you ever take the time yourself ... to get in touch with [Gagnon]?" The trial court again sustained an objection, ending the line of questioning.

When the prosecutor's questioning of Gagnon strayed into a discussion of defendant's silence, the questioning was arguably cut off by defense counsel's timely objections. Nevertheless, Gagnon did testify, "I don't like working with one side of the story," and also testified that he did not talk to anyone other than the victim about the case. Therefore, it was likely clear to the jury that Gagnon was operating without defendant's "side of the story," albeit without any further context.

The prosecutor's questioning of defendant was more direct. She directly asked defendant whether he "[got] in touch" with Gagnon regarding this case. While defendant was prevented from answering the question, there would be a reasonable inference raised simply from the prosecutor's question that defendant had not spoken with Gagnon. This inference would have been reinforced by the prosecutor's earlier questioning of Gagnon. The prosecutor's questioning in this regard was improper. Nevertheless, we conclude that this error was harmless beyond a reasonable doubt. The issue of defendant's silence was only raised on three separate occasions, two of which were only a few moments apart, and the questioning of Gagnon was otherwise properly related to his investigation. Moreover, the prosecutor never argued that defendant's silence was in any way indicative of his guilt. Further, defense counsel's timely objections prevented answers to most of the prosecutor's questions. In short, there is little or no basis for concluding that the prosecutor's improper questions were outcome-determinative in this case.

*People v. Moore*, 2011 WL 2140361, at * 7 (internal citations omitted).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *See also Gravley v. Mills*, 87 F. 3d 779, 786 (6th Cir. 1996). However, isolated references to a defendant's exercise of his right to remain silent do not deprive a criminal defendant of a fair trial when the prosecution does not use the defendant's silence to prove his guilt. *U.S. v. Weinstock*, 153 F.3d 272, 280-81 (6th Cir. 1998); *See also U.S. v. Robinson,*

20

357 Fed. Appx. 677, 683 (6th Cir. 2009)(both citing *Greer v. Miller,* 483 U.S. 756 (1987)).

In the present case, although there were several brief and improper references to Petitioner's post-*Miranda* silence, the Michigan Court of Appeals' decision that there was no due process violation remains a reasonable application of Supreme Court precedent, in light of the fact that the references to Petitioner's post-*Miranda* silence were infrequent and the prosecutor never used Petitioner's silence in her closing argument to prove his guilt. *See e.g. Shaieb v. Burghuis*, 499 Fed. App'x. 486, 498–99 (6th Cir. 2012). Petitioner is not entitled to relief on his fourth claim.

### E. Claims # 5 and # 6.  The sentencing claims.

The court considers Petitioner's two sentencing claims together for better clarity. Petitioner first claims that the trial court improperly scored his sentencing guidelines.

Petitioner's claim under the Michigan Sentencing Guidelines regime that the state trial court incorrectly scored or calculated his range is not a cognizable claim for federal habeas review. It is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. App'x. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. App'x. 52, 53 (6th Cir. 2003). Petitioner had " no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Petitioner thus "had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.* Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range

21

would thus not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).

Petitioner further appears to argue that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by Petitioner when scoring these guidelines variables under the Michigan Sentencing Guidelines.[4]

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 ( 2013).  *Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 133 S. Ct. at 2157-58.  The Supreme Court, however,

---

[4] Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 666 N.W.2d 231, 237, n. 7 (Mich. 2003)(citing Mich. Comp. Laws § 769.34(2)).  The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 684 N.W. 2d 278, 286, n. 14 (Mich. 2004)(citing Mich. Comp. Laws § 769.8).

indicated that its decision did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id.* at 2163.

Alleyne is inapplicable here because "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what happened to Petitioner. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *See also United States v. James*, 575 Fed. App'x. 588, 595 (6th Cir. 2014)(collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences."); *Saccoccia v. Farley*, 573 Fed. App'x. 483, 485 (6th Cir. 2014)("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'...It said nothing about guidelines sentencing factors...."). The Sixth Circuit, in fact, has ruled that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment. *See Kittka v. Franks*, 539 Fed. App'x. 668, 673 (6th Cir. 2013).

The court is aware that the Michigan Supreme Court recently relied on the *Alleyne* decision in holding that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial. *See People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).

However, Petitioner cannot rely on *Lockridge* to obtain relief with this court. The AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *See Miller v. Straub,* 299 F.

23

3d 570, 578-579 (6th Cir. 2002). "The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 1:16-CV-206, 2016 WL 1068744, at * 5 (W.D. Mich. Mar. 18, 2016). In light of the fact that the Sixth Circuit has ruled that *Alleyne* does not apply to sentencing guidelines factors, reasonable jurists at a minimum could disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines. *Id.* at * 6. "*Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief." *Id.; See also Perez v. Rivard,* No. 2:14-CV-12326, 2015 WL 3620426, at * 12 (E.D. Mich. June 9, 2015)(petitioner not entitled to habeas relief on claim that his sentencing guidelines scored in violation of *Alleyne*). Petitioner is not entitled to relief on his fifth claim.

Petitioner in his sixth claim argues that the trial court on re-sentencing should have applied the law-of-the-case doctrine to determine the appropriate sentencing guidelines range. "As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings." *Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 908 (E.D. Mich.,2006). A federal court cannot review a state court's alleged failure to adhere to its own sentencing procedures. *See e.g. Draughn v. Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). To the extent that Petitioner challenges the Michigan Courts' interpretation of the scope of the remand order, this is also non-cognizable on habeas relief. *See Norwood v. Bell,* No. 06-429, 1009 WL 1525989, * 7 (W.D. Mich. June 1, 2009). Petitioner is not entitled to relief on his sixth claim.

**F. A certificate of appealability.**

24

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court will deny Petitioner a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D.Mich.2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed *in forma pauperis* if it finds that an appeal is being taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R.App. P. 24(a); *Foster*, 208 F.Supp.2d at 764–65.  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the

merits. *Id.* at 765.  Although this is a decidedly lower standard, the court will

nonetheless deny leave to proceed *in forma pauperis* on appeal because the appeal

would be frivolous for the reasons stated above.

## IV. CONCLUSION

IT IS ORDERED that Petitioner Dante DeShawn Moore's petition for writ of

habeas corpus [Dkt. # 1] and the amended petition for writ of habeas corpus [Dkt. # 14]

are DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of

appealability.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 14, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 14, 2016, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522